**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CURTIS CROSS, SR., | ) | |
| | ) | CASE NO.    5:06-cv-2930 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Curtis Cross, Sr. ("Cross") challenges the final decision of the Commissioner of

Social Security, Michael J. Astrue ("Commissioner"), denying Cross's claim for a Period of

Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*.  This Court has jurisdiction pursuant to 42

U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to

the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the

Commissioner.

### I.  Procedural History

On April 17, 2003, Cross filed an application for POD and DIB alleging a disability onset

date of March 23, 2003 and claiming that he was disabled due to uncontrolled diabetes.  His

application was denied initially and upon reconsideration.  Cross timely requested an

administrative hearing.

On January 5, 2006, Administrative Law Judge William L. Hafer ("ALJ") held a hearing

during which Cross, represented by counsel, testified.  On June 15, 2006, the ALJ found Cross

was able to perform his past relevant work as a bus driver and, therefore, was not disabled.  The

ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

further review.  Cross filed an appeal to this Court.

On appeal, Cross claims the ALJ erred by finding that he could perform his past relevant

because federal regulations prevent an individual with Cross's medical conditions from

operating a commercial motor vehicle.

### II.  Evidence

*Personal and Vocational Evidence*

Born on August 13, 1947 and age fifty-eight (58) at the time of his administrative

hearing, Cross is a "person of advanced age."  *See* 20 C.F.R. § 404.1563(e). Cross has a high

school education and past relevant work as a gas line worker and a long distance bus driver.  (Tr.

15.)

*Medical Evidence*

On May 15, 2002, an x-ray of Cross's right shoulder revealed osteophytic spurring

compatible with degenerative arthritis.  (Tr. 104.)  There was also mild degenerative change at

2

the acromioclavicular joint.  *I*d.

On October 15, 2002, Cross underwent a stress test that demonstrated good exercise tolerance, no chest pain, and good heart rate recovery.  (Tr. 106-08.)

On January 16, 2003, Cross reported to Robert V. Sibilia, M.D., that he had some daytime somnolence when driving in the later hours of the evening and early morning hours. (Tr. 146.)  He was concerned about his ability to maintain focus and concentration, but had not fallen asleep at the wheel.  *Id.*  In general, Cross's energy and activity level were good.  (Tr. 146.)  Dr. Sibilia advised Cross to pull over and rest when needed.  (Tr. 147.)

On February 13, 2003, Dr. Sibilia reported that Cross had a several year history of dyspnea without wheeze, chest congestion, or sputum production.  (Tr. 142.)  Cross reported shortness of breath when climbing hills.  (Tr. 142.)  Pulmonary function testing suggested suboptimal effort by Cross.  (Tr. 142.)

On May 27, 2003, Cross underwent a stress echocardiogram that showed no evidence of ischemia.  (Tr. 109-32.)

On May 28, 2003, John W. Thomas, M.D., an ophthalmologist, wrote a letter to the Ohio Rehabilitation Services Commission and indicated that he had been treating Cross for glaucoma. (Tr. 133.)  Dr. Thomas reported that, as of April 9, 2003, Cross's vision was fully corrected to 20/40 on the right and 20/25 on the left.  (Tr. 133.)  Cross had glaucoma, which was controlled with eye drops, and early cataracts, which had not become significant enough to require surgery. (Tr. 133.)  Dr. Thomas stated that Cross should be able to function essentially as a normal sighted person.  (Tr. 133.)

On June 2, 2003, David Call, D.O., reported that he had been treating Cross since

February 2003 for poorly controlled Type II diabetes mellitus, hyperlipidemia, chronic dyspnea secondary to an ill-defined lung disease, and asthma.  (Tr. 135.)  Dr. Call indicated that Cross's diabetes was "on the verge of becoming insulin-requiring."  *Id*.  In a letter dated July 18, 2003, Dr. Call opined that Cross would not be able to work at his normal job indefinitely because of his condition and medications.  (Tr. 134.)

On August 11, 2003, Dr. Sibilia noted that Cross reported shortness of breath with exertional activities.  (Tr. 140.)  He has not had any response to inhalers.  *Id*.  Cross exhibited severe exercise impairment based on recent pulmonary function studies, but Dr. Sibilia could not identify an etiology for the impairment.  *Id*.

On August 19, 2003, a pulmonary function report yield the following impression: moderate obstructive ventilatory component; moderate gas; transfer abnormality; and abnormal gas transfer that corrects for measured alveolar volume.  (Tr. 139.)  Cross's effort and cooperation was rated as "excellent."  *Id*.

On August 28, 2003, Dr. Sibilia noted that Cross had new complaints of weakness of his arms and legs and noted that he was applying for disability.  (Tr. 136.)  Dr. Sibilia noted that Cross's most recent pulmonary studies were not consistent with the results of his earlier testing. (Tr. 136.)  Dr. Sibilia recommended that Cross obtain a second opinion from Nitin Y. Bhatt, M.D.  (Tr. 137.)

On September 3, 2003, Dr. Bhatt examined Cross.  (Tr. 153-54.)  Cross stated that he was concerned his breathing symptoms may stem from occupational exposure to gas and/or asbestos. (Tr. 153.)  Cross reported some daytime sleepiness and snoring.  *Id*.  On examination, Cross had no lower extremity edema, neurologic abnormality, or skin abnormality.  (Tr. 154).

Dr. Bhatt reviewed Cross's previous pulmonary function studies and indicated that the etiology of Cross's dyspnea was unclear.  *Id.*

On October 1, 2003 pulmonary function testing produced normal spirometry and diffusing capacity with a pattern of moderate restrictive ventilatory defect.  (Tr. 155.)  "Six minute walking distance and [oxygen] saturation during exercise were normal."  (Tr. 155.)

In a letter dated November 3, 2003, Dr. Bhatt reported that newer pulmonary function tests showed improvement from Cross's prior studies, but still showed some restriction.  (Tr. 152.)

A letter dated November 3, 2003 from Daniel Peabody, III, M.D., indicates that Cross successfully underwent laparoscopic cholecystectomy (removal of the gall bladder).  (Tr. 161.)  Cross's workup prior to surgery revealed significant anemia.  *Id.*

Ellen Cusack Frair, M.D., and Paul S. Morton, M.D., reviewed Cross's claim file on behalf of the State Agency in August and December 2003 respectively.  (Tr. 164-73.)  They concluded that Cross was limited to medium work[1] that did not require climbing ladders, ropes, or scaffolds or concentrated exposure to temperature extremes, humidity extremes, fumes, odors, dusts, gases, or poor ventilation.  *Id.*

On January 29, 2004, Carl E. Krill, Jr., M.D., a hematologist, examined Cross and found slight normocytic anemia.  (Tr. 177.)

On February 23, 2004, Dr. Krill again saw Cross and reviewed the results of recent laboratory tests.  (Tr. 176.)  Dr. Krill indicted that Cross had normocytic anemia possibly

---

[1]  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, SSA determines that they can also do sedentary and light work.  20 C.F.R. § 404.1567(c).

related to alpha-thalassemia trait.  (Tr. 176.)  Dr. Krill recommended that Cross have repeat blood testing every six to twelve months.  *Id.*  Physical examination was "quite normal," and Dr. Krill described Cross's anemia as of "very mild degree."  (Tr. 175.)

On November 9, 2005, Jason N. Suppan, DPM, a podiatrist, saw Cross for complaints of pain in his feet while sleeping.  (Tr. 189.)  Dr. Suppan noted that Cross was initially diagnosed with early diabetic peripheral neuropathy.  *Id.*  However, Dr. Suppan found that Cross did not appear to be at risk for any neuropathy-related problems as his sensations were intact.  (Tr. 189).  He recommended continued treatment with medication and quarterly diabetic foot exams.  *Id.*

On December 30, 2005, Dr. Call reported that Cross had poorly controlled Type II diabetes mellitus, hyperlipidemia, and chronic dyspnea secondary to an occupational lung disease with asthma.  (Tr. 188.)  Dr. Call stated that Cross was medication-dependent and was unable to work his normal job indefinitely due to his medical conditions and need for medications.  (Tr. 188.)

On June 28, 2006, over six months after the hearing before the ALJ and almost two weeks after the ALJ's decision, Thomas Richard, M.D. wrote a letter stating that Cross had a history of Type II diabetes mellitus that had reached the point where Cross needed insulin to assist in the control of blood sugars.  (Tr. 191.)  Dr. Richard opined that Cross's diabetes is complicated by peripheral neuropathy, elevated blood pressure, and elevated cholesterol.  *Id.*  Dr. Richard also noted that Cross's occupation as a tour bus driver required a commercial driver's license that cannot be obtained by someone who is insulin dependent.  *Id.*

On August 16, 2006, Nicholas A. Brown, DPM, wrote a letter indicating that Cross's peripheral neuropathy was "most likely permanent and resistant to current treatment."  (Tr. 207.)

6

*Hearing Testimony*

At the hearing Cross testified as follows.  He has suffered from diabetes for fourteen years and tests his blood sugar two to three times daily.  (Tr. 216.)  He takes his medication at night and is "supposed to inject [himself] with a little insulin to kind of help kick it."  (Tr. 216-17.)  He uses insulin about every other day, probably three or four units.  (Tr. 217.)  He was on insulin when he worked for the gas company, but was taken off insulin when he lost weight and started walking.  *Id.*

With respect to his feet, Cross testified that he often had numbness in the morning and could stand for a "a half hour or something" after taking his medication.  (Tr. 218.)  His feet swelled when wearing shoes and at night his feet were like ice.  *Id.*  He had an ulcer in the center of his foot for about a year.  (Tr. 219.)

With respect to his hands, Cross testified that he experienced numbness and tingling and rubbed them together to restore feeling.  (Tr. 219.)  He was able to button clothing and turn a doorknob.  *Id.*

Cross reported that he used an inhaler to help his breathing.  (Tr. 220.)

Cross estimated that he could walk no more than half a mile, but could lift a gallon of milk and carry it from the refrigerator to a counter.  (Tr. 221.)  When he felt good, he tried to help his wife with chores such as vacuuming the downstairs.  *Id.*  However, a couple of trips up the stairs of his home "whooped" him and he had to use his inhaler.  *Id.*  Cross testified that he had difficulty sleeping due to tingling and pain in his foot.  *Id.*

Cross testified that he typically left his home twice a week to have breakfast with former co-workers.  (Tr. 222.)  He last drove his car three days before the hearing.  *Id.*

Cross reported that some of his medications caused him to suffer from diarrhea.  (Tr. 222-23.)

Cross testified that he had cataracts in both eyes that required an operation, and he was prescribed medication and eye drops.  (Tr. 224.)  He later testified that he was not scheduled for cataract surgery because his eyes were "not bad enough to where [the doctor] would do it right now."  (Tr. 226.)  He can read with glasses.  (Tr. 224.)  He noticed glare when driving at night. (Tr. 224.)  His doctor informed him that his vision problems were a product of diabetes mellitus. (Tr. 225.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when

---

[2]  The entire five-step process entails the following: First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

he became disabled; and (3) he filed while he was disabled or within twelve months of the date

the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Cross was insured on his alleged disability onset date, March 25, 2003 and remained

insured through the date of the ALJ's decision.  (Tr. 22.)  Therefore, in order to be entitled to

POD and DIB, Cross must establish a continuous twelve month period of disability commencing

between March 25, 2003 and June 15, 2006.  Any discontinuity in the twelve month period

precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988);

*Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

## IV.  Summary of Commissioner's Decision

The ALJ found Cross established a medically determinable, severe impairment, due to

diabetes mellitus with mild peripheral neuropathy, restrictive lung disease without COPD, status-

post laparoscopic colocystectomy with brief episode of anemia (non-severe), and non-severe

glaucoma, but his impairments, either singularly or in combination, did not meet or equal one

listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Cross is able to perform his relevant work as a bus

driver and has a Residual Functional Capacity ("RFC") for a limited range of medium work.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

record to support the administrative law judge's findings of fact and whether the correct legal

standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003)

("decision must be affirmed if the administrative law judge's findings and inferences are

reasonably drawn from the record or supported by substantial evidence, even if that evidence

could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4ᵗʰ Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  Analysis

Cross claims the ALJ erred by finding that he could perform his past relevant because federal regulations prevent an individual with Cross's medical conditions from operating a commercial motor vehicle.

Cross contends that the ALJ's finding is contrary to the law because he cannot perform his past relevant work as a tour bus driver due to his diabetes mellitus as such a condition renders him ineligible for a commercial driver's license ("CDL").[3]  (Pl.'s Br. at 2-3.)  Pursuant to 49 C.F.R. § 391.41:

> (a) A person shall not drive a commercial motor vehicle unless he is physically qualified to do so....
>
> (b) A person is physically qualified to drive a motor vehicle if that person:
>
> ***
>
> (3) Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control;
>
> ***
>
> (5) Has no established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with his/her ability to control and drive a commercial motor vehicle safely ...

---

[3]  In addition, Cross argues that his lung disease also precludes him from obtaining a CDL. (Pl.'s Br. at 6-7.)

10

In support of his argument, Cross cites the medical opinions of Dr. Call, Dr. Richard, and Dr. Brown.  (Pl.'s Br. at 3-6.)  The Commissioner contends that the opinions from Dr. Brown and Dr. Richard were not submitted until after the ALJ had rendered his decision and, therefore, should not be considered.  (Def.'s Br. at 9-10.)  "[C]ourts may not reverse an [ALJ's] decision on the basis of evidence first submitted to the Appeals Council...."  *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *accord Elliott v. Apfel*, 28 Fed. Appx. 420, 423 (6th Cir. 2002) ("If the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ."); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."); *Osburn v. Apfel*, 1999 U.S. App. LEXIS 16220 at *11-12 (6th Cir. 1999) (finding that a district court "is charged with reviewing the decision of the ALJ, and not the denial of review by the Appeals Council" and "may only review evidence that was available to the ALJ.").[4]

Furthermore, the Commissioner argues that while a claimant may seek remand for consideration of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g), Cross has not requested such a remand and has thereby waived such an argument.  (Def.'s Br. at 9-10.) The Sixth Circuit opined that "evidence submitted after an ALJ's decision [may be reviewed] only for the purpose of determining whether a remand is appropriate under sentence six of 42 U.S.C. § 405(g)," but declined to do so as the claimant had not requested such a remand.  *Yamin v. Comm'r of Soc. Sec.*, 67 Fed. Appx. 883, 885 (6th Cir. 2003).  After reviewing Cross's brief as

---

[4]  While not all circuit courts agree on this issue, *see, e.g., Brown v. Apfel*, 2000 U.S. Dist. LEXIS 16274 (D. Me. Jun. 16, 2000), this Court is bound to follow the decisions of the Sixth Circuit Court of Appeals cited above.

a whole, it is clear that he is not requesting a remand based on the presence of new and material evidence, but is instead arguing that the ALJ's decision was erroneous and seeks a reversal with an award of benefits.  While a sentence four remand is a *post-judgment* remand in conjunction with a decision affirming, modifying, or reversing the ALJ's decision, a sentence six remand is a *pre-judgment* remand for consideration of new and material evidence, which leaves the ALJ's previous decision intact.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).  Cross's request that this Court reverse the ALJ's decision and award benefits is inconsistent with the nature of a sentence six remand.  Notably, Cross has not filed a reply brief to respond to the Commissioner's arguments and to clarify his position.  For the reasons stated above, the Court declines to consider any evidence that was not submitted before the date of the ALJ's decision, namely the decisions of Dr. Brown and Dr. Richard.

The only remaining medical evidence identified by Cross that would disqualify him from obtaining a CDL for having insulin dependent diabetes are three opinions by Dr. Call.  (Pl.s' Br. at 3-4.)  However, Dr. Call's letter of June 2, 2003 merely states that Cross's diabetes mellitus was only "on the verge of becoming insulin-requiring, pending his next office appointment." (Tr. 135.)  The regulations only disqualify persons who are "currently" dependent on insulin to control their diabetes mellitus and not individuals whose diabetes is nearing the point of insulin dependence.  *See* 49 C.F.R. § 391.41(b)(3).  Dr. Call's letter of July 18, 2003 merely opines that Cross is unable to work due to his "condition and medications" and does not state whether Cross had indeed become insulin dependent.  (Tr. 134.)  Finally, Dr. Call's letter of December 30, 2005, states that Cross's diabetes mellitus is "poorly controlled" and that Cross is a "medication-dependent gentleman."  (Tr. 188.)  Although Dr. Call lists several medications, including two

12

common diabetes drugs, insulin is notably absent from the list.  *Id.*  In fact, the letter of another

physician, Dr. Suppan, written two weeks earlier expressly states that Cross is a "non-insulin

dependent diabetic."  (Tr. 189.)  Cross testified that he takes insulin every other day to assist his

other medications.  (Tr. 216-17.)  Given the available evidence, the ALJ's decision that Cross

could perform his past relevant work as a tour bus driver – and the implied finding that Cross did

not require insulin to control his diabetes mellitus – are supported by substantial evidence.

Cross also argues that his lung disease precludes him from obtaining a CDL.  (Pl.'s Br. at

6-7.)  This argument is undeveloped.  Cross merely quotes a medical opinion from Dr. Sibilia

that contains a diagnosis of lung disease with an undefined etiology and an impression of

exercise intolerance.  (Pl.'s Br. at 6-7.)  The regulations consider a person physically unqualified

to drive a commercial vehicle with an "established medical history or clinical diagnosis of a

respiratory dysfunction *likely to interfere with his/her ability to control and drive a commercial

motor vehicle safely*."  49 C.F.R. § 391.41(b)(5) (emphasis added).  Cross only identifies a

diagnosis of a respiratory dysfunction but fails to make any argument as to how his lung disease

would interfere with his ability to safely operate a motor vehicle.  It is not the Court's function to

search the administrative record for evidence to support Cross's argument.  *See McPherson v.

Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.  It is not

sufficient for a party to mention a possible argument in the most skeletal way, leaving the court

to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S.

App. LEXIS 11680 (6th Cir. May 11, 2006); *Erhart v. Sec'y of Health & Human Servs.*, 989 F.2d

534, 537 n.5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to

13

"discussion of argument, raised if at all, 'in a very opaque manner.'")  Thus, Cross's argument

that the presence of lung disease rendered him unqualified for a CDL is deemed waived.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by

substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and

judgment is entered in favor of the defendant.

IT IS SO ORDERED.


/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: December 3, 2007